May I please the court? This case presents two questions to the court. The first being a question of statutory construction. Regarding the definition of the term access device that is found in Title 18 United States Code Section 10291. The second question is which is the better reading of the application note that is found in Guidelines Section 2B1.1 at Commentary Note 3FI. In terms of the first question, if the district court employs an improper legal definition of access device in its guideline loss determination, that is reversible error and abuse of discretion. That claim was made here below in pleadings before the sentencing hearing occurred and in the oral argument at sentencing. It's a very well preserved claim. It asserts that an access device has the literal meaning given to it in Section 10291. That it's a means of account access that can be used to obtain something of value. It underlies the definition of unauthorized access device and counterfeit access device. In fact, the term access device is the first part of that definition. Each of them is first and foremost an access device. The question here is not whether there is or is not a usability element or aspect in this definition of access device and counterfeit and unauthorized access device. The question is really what is its meaning and what is its scope. The literal language of the statute that is incorporated expressly by the guideline leaves no doubt that an access device is something that can be used to obtain something of value. Government failed to carry its burden of proof on this issue. And the court employed an uncertain legal definition not supported by the statute to find that each and every entry, 2,580 entries on Government Exhibit 1, constituted unauthorized or counterfeit access devices. Even the government never specified which and failed to produce evidence to support that conclusion. Can you just flesh out a little bit more about can be used? What in your mind are the mechanisms of can be used? That if inserted in the machine it works? I mean, suppose if inserted in the machine it doesn't work, but if you give it to a vendor over the telephone and even though it may not be operable, it can be used. In that instance, the latter, Your Honor. You have a specific example of a transaction that reflects its use. You can say it can be used. I'm not suggesting that a device has to be used to meet the standard of usability. It just needs that capacity. The capacity at what point in time? Something that has relevance to the defendant's possession. I'm not suggesting At what point in time? At the point in time when the defendant comes into possession of it? Well, if then, yes. If after he comes into possession it becomes an active account and has usability, then at that point. It doesn't need to be at the point of seizure. It doesn't need to be at the moment of acquisition. It just has to have relevance to the defendant's possession. So if he steals it and it gets canceled before he can make use of it? Yes. Before it gets canceled, it has usability. If he uses it after and is successful, it has usability. But if it's useless, it doesn't meet the definition in 102-91. As even the government acknowledged in the un-useful case from the Ninth Circuit. They were asked if the access devices were 35 years old and the numbers were useless. Did they qualify under the definition? The government said no. Why wouldn't a way to handle that be just to make that relevant to the intention of the user? In other words, for the intended loss provision, the loss still has to be intended. And you might say if he has a 35-year-old number because he's been doing this for 35 years and it's old, at that point, that wouldn't be part of his intended scheme. But it wouldn't necessarily mean that the numbers don't qualify for purposes of the statute as an access device because it's the type of thing you could use to get access. But whether he intended any loss from it, well, there would just be evidence of that kind to show there was no intended loss. Here, the defendant didn't put on evidence that although I have 2,500 numbers, I only intended to use enough of them to get X number of dollars. In terms, Your Honor, of the definition of guidelines loss, I would point out the fact that the defendant's intention nowhere appears in the statute. So it's not in the guideline either. It doesn't say he has to intend it to be able to use the device. It just says that it can be used. Yeah, but he can only be charged with the loss that is intended, right? Well, I think you can infer intent in some circumstances. I think if a defendant intends to use a useless device, I don't think you apply loss under those circumstances. I think that would be contrary to the statute which says the device can be used. But here what I'm saying is the note says, I understand the argument it doesn't qualify as an access device. I'm assuming you're not right about that. It's $500 to be charged per. If there's use. That's our other argument. If what? If there's... Because of your reading of the text. Yes. I don't want to be with that argument also. I guess what I'm wondering is, isn't there still an intent piece to it? But here we just don't have any developed argument about his actual intentions. Well, that's true. Yeah. And... So, but in a case in which you posit the extreme case of his 35 years old, et cetera, well, that could be put forward as evidence to show what his actual intentions were with respect to the law. Is that wrong? If he knew. I mean, you'd have to show the knowledge, I think. And even in a case where you have a useless device, which is demonstrated to be useless, I don't think the defendant's intent alone is justification for the application of loss. It may be a factor that the court can consider, but I think loss requires an access device that can be used. That's the literal language of the statute. So the defendant's intent regarding that, I don't really think is a determinative question of this definition. Isn't there a provision in the statute defining access device that says something that's, it'd be impossible to use it qualifies? Well, I think that the burden of the enhancement lies on the government. And I think they have to demonstrate its usability. And if... No, but I'm saying that I thought that was in the statute contemplates one of the things that can be an access device is something that which is impossible to use to get the funds. Right? I don't believe the impossibility is there. I think for the definition, counterfeit one is a device that is counterfeit, fictitious, altered or forged. And for unauthorized, it's lost, stolen, expires, revoked, canceled or obtained with intent to defraud. So the impossibility never appears in the definition. Thank you, Your Honor. Ms. Bunker, before you begin, it's my understanding that today may be your last day with our court. It will be my last day on behalf of the United States attorneys. In your current position. You have a couple of arguments today. Well, this will have no impact on which side might prevail in either of those cases today. But on behalf of the court, I'd like to thank you for all your years of service to the court. You have always represented your client in a dignified manner. And I thought you ought to be acknowledged for that. Thank you. Ditto. Yes, we agree. Thank you. This court should join the 4th, 5th, 6th, 7th and 8th circuits and find that there is no usability requirement in the guideline footnote 3F1, which and the only statutory provisions explicitly cross-referenced in the guidelines as applicable to that footnote are 1029 E2 and E3. The sentencing commission never mentioned 1029 E1. The only case that Rueda has on her side, this side, is that 9th Circuit Onioso opinion, which we maintain is an outlier. We maintain that the court should not be writing into the guideline note, or E2 and E3, a usability element that just doesn't exist. And particularly where E3, for unauthorized access devices, specifically includes devices that are expired, revoked and canceled, which more likely than not most often cannot be used to obtain at least a loan, something of value. However, multiple courts have indicated that E1 even includes not just obtaining goods or services or money, but also any other thing of value. That's even in E1. So to the extent the opponent's argument is that only Onioso sufficiently harmonizes the three subsections of 1029 E, I would direct the court to Carver out of the 4th Circuit, Popovsky out of the 7th Circuit, and Visnowski out of the 6th Circuit, because those two cases also harmonize the various sections of 1029 E. By reading E1 more broadly, meaning Popovsky is a good example, where they interpret the can be used more broadly to include access devices in their general sense, what they're generally used for. We're not talking about shoes or other trinkets. If it's generally used for, why do you think the choice was made to use the term can be used as opposed to designed for use? I don't know the legislative history, Chief Judge Howard, on that. I haven't done that research. I think it was either Carver or Popovsky that also talks about one of the reasons was perhaps Congress's intent to make it broad to account for the technologies that are constantly evolving. I think the Carver case also talks about can be used means this is the sort of thing that is generally used to get a thing of value, but they use the example of the salesperson with the television remote they're selling. It can be used on any model of television. Remote may need batteries. Popovsky flatly rejected Onioso, but harmonized E1 and E3 well, we think, by discussing that it's the general nature of the device. I mean, these devices have... Suppose I write down 16 numbers. Is that an access device? No. Why not? It might be if you wrote it down from a card. No, no, I just wrote it down thinking I could trick somebody with it. Maybe they would write it down and prove the charge in the meantime or something. Perhaps if you got lucky and it actually proved to be an access device. Or as in this case, you swipe a number through a machine. We had each access device had correct data. When you say got lucky, would that mean if it worked, then it works? It could qualify. I haven't seen that scenario, but I would imagine if you wrote down... Do we know, is there any evidence for this case, all those numbers, what is the government's claim about what we know about those numbers, the 2,500? Sure. What we know about those numbers is they came off the laptop. They were in text or data files on the defendant's laptop. They were swapping e-mails. The only source or evidence we have... I know my opponents talk about getting numbers, randomly digitized numbers off the web. That's nowhere in the evidence. The only evidence we have about where these folks were getting numbers is from those skimming devices. Is the government's position that you can win because we can presume or there's enough evidence to conclude that all the numbers there were taken from skimming devices? No, I think we couldn't make that statement. What could you make as a statement about these numbers? What are these numbers? I think that the court could look at some circumstantial evidence and the defendant's own admissions. First of all, she pled guilty to conspiracy to commit access device fraud. She only needs one for that. Right. So look to the... And the conspiracy lasted. Conceitedly, she was active in it for about six or seven months, meaning they were riding around, traveling around the country... Let me ask you another way. ...using successful... From the record, the government's position is that we know every number on that list is at least what? We would submit more likely than not an access device. Not for that. But I'm talking about what. Because it was taken from a skimming device, because it was... That's one factor. And let's look at the PSR as well. I noted that Brueta told the district court, it's at appendix page 20, that she had no factual objections to the PSR, and defense counsel confirmed as much. So in paragraph four of the pre-sentence report, it's at the seal of the den on page eight, quote, the PSR explained, the defendants purchased merchandise and or gift cards at various retailers in May using fraudulent credit cards that contained real account slash card numbers, end quote. So your position is that the record suffices to show that every number in that grouping is a real, correlates to a real account number? Our position, first and foremost, is there is no usability account. We don't necessarily have to show that Popovsky rejected Popovsky's claim that there's any requirement of card-by-card showing of functionality. So that's our position. When I said it doesn't necessarily have to be that it wasn't canceled, but are you at least saying every number on that list, the record supports the conclusion that correlates to a real account number? I think based on the circumstantial evidence, the court concluded it's more likely than not, and given what these folks were endeavoring to do. They also admitted that in the PSR same paragraph that they were embossing them onto these cards, sometimes with the conspirators' names and sometimes with the card holders. Okay, then second, so if at a minimum you're saying we could deduce from the record that every account number is a real account, correlates to a real account number, and then do we know anything from the record about the oldest vintage of any account number on that list? Does the government have a position on that? I'll comment on your first thing. I think there are 2,800, 500, whatever the number is, numbers there. I'm not saying there's record evidence. I think the circumstantial evidence is more likely than not. That each one is. They were treating them as real. They were going around using them, holding them as real, and I don't know the dates, Your Honor. I know that this was an active conspiracy fraudulent scheme going from November 2015 into June 2016. Is the government's position it doesn't matter what the dates are? If it's 30 years old, it's the same? I'm not going to concede, as the government did in Onioso, that 35 years is a blanket bar. I think Judge Barron, you sort of intimated it that way. This could be rather fact-specific. That's what I'm trying to figure out. We have data breaches out there. We don't really know what people are doing. I'm just trying to get a sense, what is the government's position as to what I am supposed to conclude these numbers are? So you suggested I shouldn't just conclude it's a random number that the person wrote down. There's no evidence they were commingling random numbers. So what is the evidence of? What are these things then? There's a list of numbers. Do they correlate to real account numbers? If they do, how far back do they go? In other words, what's the government's view of what this list of numbers are so that I can figure out how far I'm going if I say this is an access device? Do you see what I'm saying? And can I just add a little bit on that? You said that they're numbers, and you said that there are situations where it's clear that those numbers have been embossed on cards, gift cards, with the perpetrator's name. Or sometimes with the actual card holder. With the actual card. I mean, we're trying to figure out how do you differentiate between just random numbers and numbers that a reasonable inference can be drawn that those were part of the scheme. None of these, based on my understanding of the record, none of these just popped up as 16 digits isolated. They were 16 digits coupled with track data and coupled with bank identification numbers identified actual financial institutions. There's no evidence that the conspirators were... Each one has this one? Yeah. The other ones counted for sentencing loss purposes. There were 50, I can't remember the amount, 150 maybe, that did not come up as having actual financial institutions. And those, the probation officers did not count for purposes of estimating the loss in this case. And so I think when you couple the circumstantial evidence along with early evidence only admissions in the pre-sentence report, that this is what the scheme was about. They were obtaining real numbers so that they could use them for real fraudulent practices. And the only evidence we have is that they were doing them by skimming. They may have been doing it by some other means. But again, we don't have dark websites. And we'll ask the court... Thank you. Thank you. Your Honor, I think you've hit a critical issue. We don't really know anything about these numbers. There was no evidence introduced into the hearing, the sentencing hearing. What about what Ms. Bunker just said, that with each number there was at least, with the exception of 150, the mention of a bank? Well, Your Honor, the idea of a bin number, the bank identification number, is something someone could likely glean from the Internet and place it into a hypothetical number and call it from the American Express. But you didn't put... I'm sorry. That may be one reasonable inference, but there could be another reasonable inference also, which the court made? Your Honor, there was no evidence to allow that inference. If there had been a bank official testify, an affidavit from somebody that says, yes, this was genuinely an account at our institution, some copy of a statement from the person who held the card to show that it was an active account. But all you have is hypotheticals here that you don't even know it says American Express, but how do you know that's really their bin number? And how do you know that that bin number wasn't something supplied? Because they had software to create these types of cards that could apply both Track 1 and 2 information, and what those tracks contained, it's something you could just look up on the Internet. Oh, that would be the name and address of the account holder, and this would be the code for the bank, and it doesn't mean that any of them are genuine, let alone how old they are, and whether or not they're useless, completely useless, like the 35-year-old numbers. But one way to read the record would be the position of the defendant was that if they're useless, defendant wins, they can't be used, right? And that's the position. But a consequence of taking that position might be that there was no challenge made to the notion that these were not just made-up numbers, that they were numbers that correlated to a bank account, but since there was no evidence that they could be used, they were no good. But the consequence of that would be it seems fair to read this case as a case in which the numbers could be legitimately inferred to be at least real numbers relating to real accounts. Whether or not any of those accounts were useful would then just raise the legal question of whether that matters. In response, Your Honor, I'd say that everything that might indicate that in the pre-sentence report was challenged as a part of the defendant's challenge to the factual basis for the court's determination that these were genuinely accessed devices. So you can't cherry-pick inferences out of what's deemed to be admitted there because that was all challenged. And then as far as evidence beyond the challenge to the pre-sentence report, there are the comments of the prosecutor at the sentencing hearing. There's no testimony. There's no affidavit. There's no statement from the bank. There's just the exhibit. And he's telling the court what it proves.  Thank you, Your Honor.